EXHIBIT A

DECLARATION OF CATARINA ROBLES

I, Catarina Robles declare as follows:

1. I am employed by the United States Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), formerly known as the Immigration and Naturalization Service ("INS"). I am employed as a Senior Adjudication Officer at the San Francisco District, San Jose Sub-Office. I have been employed by the Department of Homeland Security (formerly Department of Justice), USCIS since June 29, 1988. During that time I have worked as an Adjudicator in the Adjustment of Status and Special Cases Units.

2. This declaration is submitted in support of Defendants' motion to dismiss. This declaration provides a factual summary of the agency's adjudication policy as well as a review of the plaintiff's file.

3. When a visa petition or other application seeking an immigration benefit on behalf of an alien is filed with USCIS, the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

1

4. The attached Fact Sheet explains the different types of checks that must be completed. (See Fact Sheet, dated April 25, 2006, a true and correct copy of which is attached hereto as Exhibit 1). The checks include the FBI Name Check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS). The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly. The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies. It is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. IBIS provides, but is not limited to, information related to persons who are wanted criminals, persons of interest in the context of national security, and other derogatory information, including adverse immigration history. While the results of an IBIS query are usually available immediately, in some cases information found will require further investigation. Finally, FBI fingerprint checks provide information relating to criminal background within the United States. Results are usually received within days and while the vast majority result in no criminal record, positive results may have a direct bearing on the eligibility of an applicant for the immigration benefit being sought.

5.  Prior to April 01, 2005, with a few exceptions, Family-based I-485 applications were filed at the local field office through a local post office box.

6.  Upon receipt of an I-485 application and its related forms, the Immigration Information Unit reviews the application and its related forms, and if the applicant is determined to be eligible to file, the entire I-485 packet is processed for fee receipting. If no prior A-file exists, an A-file is created and, unless exempt, the applicant is scheduled for fingerprint processing at the local ASC (Applications Support Center).

7.  The A-file is then transferred to the Clerical Unit for the creation of Form I-181, *Memorandum of Creation of Record of Lawful Permanent Residence*. Copy 2 of the Form I-181 is mailed to the California Service Center for data entry into the CLAIMS 3 LAN tracking system that allows data changes as well as adjudicative actions to be performed.

8.  Through this system, the generation of an FBI name check is automated - the electronic transmission of a FBI name check request is through FBIQUERY, the FBI repository and tracking system for FBI Name Check and fingerprint check requests.

9.  The case is scheduled for an interview and, if, upon the completion of the interview, an application is otherwise approvable, but all the background checks are not completed, the application is placed on a pending background check shelf.

10. FBI name check requests that have been received by the FBI but have not yet been completed are indicated by a notation of "Pending" in FBIQUERY. An FBI Name Check that has been completed will be indicated by various entries depending on the result, including No Record, Positive Response, etc.

11. Our reports will also identify those I-485 applications that have received a "No Data" or "Error" response in FBIQUERY indicating a problem with transmission of the name check request from USCIS to the FBI. If such a problem is reported, the FBI name check requests will then be initiated a second time and resent manually or electronically to the FBI for a response. In this way USCIS ensures that the FBI has in fact received all requests for name checks

12. All files on the FBI Name Check Shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least every week. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication. FBIQUERY reports do not provide USCIS with any indication as to what information the FBI may have relating to a particular alien, whether an FBI investigation into the particular alien has been undertaken, or whether there are national security concerns relating to that alien.

13. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where

4

the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

14. Prior to December 21, 2006, USCIS accepted the filing of a mandamus lawsuit as a criterion for expediting security checks. However, as of December 21, 2006, that policy has changed and the agency will no longer seek to expedite required security checks based on the filing of a mandamus action.

15. USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

16. The FBI has an established process of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. As stated above, certain

requests can be expedited if they meet specific expedite criteria. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. There is no statutory or regulatory time limit for the adjudication of I-485s. Moreover, an alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her application is pending. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Thus, applicants for adjustment of status are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

17.    In my capacity as a Senior Adjudication Officer, in the San Jose sub-office of USCIS, I have access to the official files and records of the USCIS. I have reviewed the system records for plaintiff Rosalinda Lopez, A097 296 703. The record reflects that on June 02, 2004, plaintiff filed an application for adjustment of status on Form I-485. Plaintiff applied for adjustment of status under Section 245 of the Immigration and Nationality Act ("INA"), based on an approved I-130 Petition for Alien Relative filed on her behalf, by her US Citizen husband Antonio Torres. On August 19, 2004 an FBI Name Check was initiated, on August 24, 2004 the Service received a response as of "ERROR". On February 7, 2006 a second request was initiated and remains pending. On January 20, 2005 Plaintiff was interviewed for her adjustment of status application together with her son Edgar Torres Lopez. On February 8, 2006, Edgar's FBI name check was completed and on November 23, 2007 his adjustment of status application was approved. The adjustment of status application

6

for Rosalinda Lopez was continued for the completion of the FBI name check. To date, that application remains pending the completion of security checks. Once the required security checks are completed, plaintiff's application will be adjudicated. For this reason the USCIS cannot adjudicate plaintiff's I-485 application for adjustment of status until such time as all security checks are complete.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30 day of January, 2008 at San Jose, California.

Catarina Robles, SAO

Catarina Robles

Senior Adjudication Officer

San Jose, CA

7

EXHIBIT 1

*Press Office*
U.S. Department of Homeland Security



# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

**Immigration Security Checks—How and Why the Process Works**

---

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.

# EXHIBIT B

Office of Communications
U.S. Department of Homeland Security



February 20, 2007

# USCIS Update

### USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security. USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services, while enhancing our nation's security.